# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-00251-SCT

*JIMMIE ANN JENNINGS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/95 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PATRICIA W. SPROAT |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/2/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/23/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This post conviction collateral relief appeal comes from the Circuit Court of the First Judicial District of Hinds County, Mississippi, where on March 22, 1993, Jimmie Ann Jennings tendered a guilty plea to a single charge of Medicaid Fraud under Miss. Code Ann. § 43-13-205(2) brought by criminal information. She received a non-adjudicated sentence, in accordance with Miss. Code Ann. §§ 43-13-215 (Supp. 1995) and 43-13-225 (Supp. 1995), that imposed the following conditions:

(a) unsupervised probation for a period of two (2) years;

(b) a fine to Hinds County, Mississippi, in the sum of $1,000.00, said sum to be paid in full immediately to the Circuit Clerk;

(c) all court costs to the Circuit Clerk of Hinds County, in this cause immediately;

(d) pay restitution to the State of Mississippi, division of Medicaid, in the sum of $28,160.20 (twenty eight-thousand one hundred sixty dollars and twenty cents), said sum to be paid immediately;

(e) pay additional treble civil penalty to the State of Mississippi, Office of the Attorney General, Medical Fraud Control Unit, in the sum of $84,480.60 (eighty-four thousand four hundred eighty dollars and sixty cents), to be paid in four equal payments on July 1, 1993, October 1, 1993, January 1, 1994, and April 1, 1994. [Jennings signed a promissory note agreeing to pay this amount].

¶2. On April 7, 1994, the State filed a petition to revoke Jennings's non-adjudicated status due to her failure to make any of the four required quarterly installments of the treble penalty. Jennings confessed to the petition on April 19, 1994, and after the court heard testimony on April 19 and May 19, 1994, the court made a finding that Jennings had the ability to pay the penalty. Her guilty plea was accepted, and she was sentenced to five years in the penitentiary, as allowed by Miss. Code Ann. § 43-13-215 (Supp. 1995), and again directed to pay the civil penalty, as allowed by Miss. Code Ann. § 43-13-225 (Supp. 1995). The sentencing order was subsequently entered on the Judgment Rolls of the First Judicial District of the Circuit Court of Hinds County. Following several motions filed by Jennings in May and June and hearings held in July and August of 1994, the trial court reaffirmed its earlier finding that Jennings had the ability to pay the penalty.

¶3. Jennings filed a Motion for Post-Conviction Collateral Relief on January 13, 1995, and the Motion was denied on January 31, 1995.

## STATEMENT OF THE ISSUES

**I. DID THE APPELLANT'S CONVICTION AND SENTENCE VIOLATE THE DOUBLE JEOPARDY CLAUSE?**

**II. DID THE ASSESSMENT AND ENFORCEMENT OF A CIVIL PENALTY VIOLATE THE MISSISSIPPI CONSTITUTIONAL PROHIBITION AGAINST IMPRISONMENT FOR DEBT?**

**III. DID THE APPELLANT LEGALLY WAIVE HER RIGHT TO CHALLENGE THE CIVIL PENALTY BASED UPON VIOLATIONS OF THE STATE AND FEDERAL CONSTITUTION?**

**IV. IS THE APPELLANT A HEALTH CARE PROVIDER OR VENDOR PURSUANT TO MISS. CODE ANN. § 43-13-225?**

## STATEMENT OF THE FACTS

¶4. From 1989 to 1993, Jennings was the co-owner of Little Rascals, Inc., which provided daycare services. Jennings worked at the daycare as a speech therapist. In 1991, Jennings misrepresented her qualifications and forged certain documents enabling her to receive a Medicaid provider number as a speech pathologist. She then submitted false claims to Medicaid for more than $28,000.

¶5. Jennings entered a plea of guilty to Medicaid fraud and was given non-adjudicated status,

assuming that she met the terms of the plea agreement which included a civil penalty, in accordance with Miss. Code Ann. § 43-13-225 (Supp. 1995). The non-adjudication of the charge allowed Jennings to keep her record clear of any felony convictions. Jennings told the trial judge that she would be able to pay the penalty. Jennings did not make a single payment toward the civil penalty. When the State moved to revoke her non-adjudicated status, she asked the trial court for leniency because family problems, separation from her husband, difficulties in pregnancy and other factors prevented her from making the payments.

¶6. The trial judge was unmoved by the plea for leniency, finding Jennings capable of making the payments, and sentenced Jennings to serve five years in prison, in addition to the civil penalty. After the initial guilty plea, but prior to the second guilty plea and the resulting incarceration, Jennings took a position as an unpaid consultant for the Spirit of Life Children's Shelter, a non-profit organization headed by Jennings's sister, Mary McElroy. Furthermore, there were questionable land transfers and transactions following the imposition of the civil penalty that drew the trial court's attention. In fact, the trial judge, in reviewing the Motion for PCR, was not convinced that Jennings was telling the truth about her financial situation: "[I]ts obvious to me that from the defendant's record and from her testimony that's been presented, that she's willing to testify to anything that would be to her advantage, and I find her testimony unbelievable in many, many ways."

¶7. After reviewing Jennings's Motion for Post Conviction Relief, the trial court upheld her five-year prison sentence and the civil penalty, finding that Jennings was able to make the payments. Jennings now appeals to this Court seeking relief from the prison sentence and the civil penalty imposed by the lower court.

## ANALYSIS

¶8. All issues presented by Jennings are procedurally barred. Miss. Code Ann. § 99-39-21(1), states:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues, or errors either in fact or in law which were capable of determination at trial an/or on direct appeal, regardless of whether such are based on the laws of the Constitution of the State of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

¶9. The State cites *Mann v. State*, 490 So. 2d 910, 911 (Miss. 1986), where this Court held that a post-conviction claim for relief based on double jeopardy is procedurally barred because it is capable of determination either at trial or on direct appeal.

¶10. Jennings did not make a double jeopardy argument or arguments in support of the other three issues until her Motion for Post Conviction Relief on January 13, 1995. The issues were not presented when Jennings confessed to the State's Petition to Adjudicate Guilt on April 19, 1994, or when she was sentenced on May 19, 1994. Nor were they presented during the Appellant's two additional appearances before the trial court for her Petition to Reconsider Sentence on July 18, 1994, or August 1, 1994.

¶11. Although all of the issues presented by Jennings are procedurally barred and without merit, we will briefly discuss Issues I and IV in the interest of clarity.

## I. DID THE APPELLANT'S CONVICTION AND SENTENCE VIOLATE THE DOUBLE JEOPARDY CLAUSE?

¶12. Jennings was imprisoned for her failure to pay the treble civil penalty of $84,460.60, as imposed by Miss. Code Ann. § 43-13-225 (Supp. 1995). She argues that the civil penalty and the resulting imprisonment constitute a violation of the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution and Article 3, Section 22 of the Mississippi Constitution when considered with other punishment received (i.e., fine for actual amount of fraud, probation, etc.).

¶13. Jennings contends that the imposition of the civil penalty was punishment since it bore no relation to the costs incurred by the State as a result of her fraud. She cites *U.S. v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), to support her position. Halper worked as a manager at a laboratory in New York that provided medical services to patients eligible for Medicare benefits. Halper submitted 65 separate false claims for Government reimbursement. He was convicted of a felony, sentenced to imprisonment for two years and fined $5,000. *Halper*, 490 U.S. at 437, 109 S.Ct. at 1896. Following his conviction, the District Court granted the Government summary judgment in its civil suit against him under the federal False Claims Act (31 U.S.C. § 3729 et seq.). *Id.* at 438, 109 S.Ct. 1896. At that time, the Act allowed for a civil penalty of $2,000 per violation, as well as for twice the amount of the Government's actual damages of $585 and the costs of the action. This totaled more than $130,000 for a crime that yielded $585. The District Court only entered a judgment for $16,000 plus court costs in order to make the Government whole. *Id.* at 439, 109 S.Ct. at 1897. The District Court concluded that the imposition of the entire amount would violate the Double Jeopardy Clause. *Id.* at 438, 109 S.Ct. 1896. The Government appealed.

¶14. The U.S. Supreme Court stated that the Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Id.* at 440, 109 S.Ct. at 1897. The Supreme Court considered the question of whether the statutory penalty authorized by the False Claims Act constituted a "punishment" under the double jeopardy analysis. *Id.* at 441, 109 S.Ct. at 1898. The Court held that a civil sanction constitutes punishment for double jeopardy purposes if the sanction cannot be characterized as remedial, but only as a deterrent or retribution. *Id.* at 449, 109 S.Ct. at 1902.

¶15. Jennings goes to great lengths to analogize the case *sub judice* with *Halper*, basing her entire argument on the proposition that the civil penalty was punitive in nature. Jennings fails to mention that the Court in *Halper* required a subsequent civil proceeding seeking additional punishment following a criminal conviction to invoke the Double Jeopardy Clause. *Id.* at 451 n.10, 109 S.Ct. at 1903. The Court limited the application of its decision by stating:

> In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole.

*Id.* at 451, 109 S.Ct. at 1903.

¶16. The Court also recognized the validity of fixed-penalty-plus-double-damages as used in the False

Claims Act.[1] *Id.* at 449, 109 S.Ct. at 1902. Furthermore, the Court made a clear statement of the actions that the Government may take:

> Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy Clause simply is not implicated. Nor does this decision prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple-punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. *See, e.g., Missouri v. Hunter*, 459 U.S. 359, 368-369, 103 S.Ct. 673, 679-680, 74 L.Ed.2d 535 (1983) ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial").

*Id.* at 450-451, 109 S.Ct. at 1903.

¶17. It is clear that *Halper* does not support the argument presented by Jennings. There was not a subsequent proceeding as required to trigger the protections of the Double Jeopardy Clause. The sentence imposed by the trial court was within the statutory authority granted by the Mississippi Legislature in Miss. Code Ann. §§ 43-13-215 (Supp. 1995) ("imprisonment for not more than five years . . . ") and 43-13-225 (Supp. 1995) ("civil penalty equal to the full amount received, plus an additional civil penalty equal to triple the full amount received . . . "). Even if the civil penalty was considered "punishment," the application of the penalty in a single proceeding in accordance with statutory law did not violate the Double Jeopardy Clause according to the Court in *Halper. Id.* at 45, 109 S.Ct. at 1903.

¶18. Jennings continues by arguing that the civil penalty was enforced in a punitive manner because there was no provision to release Jennings from prison upon payment of the civil penalty. Jennings cites no case law to support this argument. At this point, Jennings suggests her imprisonment stemmed from a contempt of court proceeding. There is nothing in the record to suggest that Jennings's imprisonment was the result of a contempt of court proceeding or the substance of a contempt of court proceeding. To the contrary, her imprisonment arose from a probation violation that vested when she failed to pay the civil penalty imposed in her prior non-adjudicated guilty plea. The comparison of civil and criminal contempt actions and the cases presented by Jennings have no relevance to the case *sub judice*.

¶19. When she violated the terms of probation, Jennings became subject to the full statutory penalty for her crime, just as any other defendant with probation. The initial probation given to Jennings was to her benefit, and when she violated the terms of the probation, the trial court had the authority to impose any sentence in accordance with Miss. Code Ann. §§ 43-13-215 and 43-13-225.

¶20. In conclusion, the State's argument that this issue is procedurally barred is well taken. More important, the arguments presented by Jennings are completely without merit. The *Halper* case cited by Jennings as the backbone of her argument is in complete opposition to her conclusion. The case clearly precludes double jeopardy claims when a single proceeding is involved and the punishment is within statutory authority. That is the case at hand. Therefore, the decision of the trial court is affirmed as to this issue.

### IV. IS THE APPELLANT A HEALTH CARE PROVIDER OR VENDOR PURSUANT TO MISS. CODE ANN. § 43-13-225?

¶21. Miss. Code Ann. § 43-13-225 states:

> (1) A **health care provider or vendor** committing any act or omission in violation of this article shall be directly liable to the state and shall forfeit and pay to the state a civil penalty equal to the full amount received, plus an additional civil penalty equal to triple the full amount received.

> (2) A criminal action need not be brought against a **person** for that **person** to be civilly liable under this article.

(Emphasis added.)

¶22. Jennings argues that the statute only applies to health care providers or vendors, and since she is not one, she cannot be held liable for the civil penalty. Jennings contends that the terms "health care provider" and "health care vendor" are not defined by the Mississippi Medicaid statute, Miss. Code Ann. § 43-13-101 et. seq. Jennings cites numerous statutes in an attempt to define "health care provider" as one who is licensed or credentialed by the State of Mississippi. Since Jennings was not licensed by the State and her crime actually involved forging documents to appear licensed, the statute should not apply to her.

¶23. The State also contends that Jennings's reading of the statute is too limited. Under subsection two, the term "person" is used instead of the term "health care provider." The State suggests that by using the term "person," the Legislature revealed its intention for the statute to apply to a broader class of offenders. The term "person" is defined in Miss. Code Ann. § 43-13-203(e) of the Medicaid Fraud Control Act, as: "an individual, corporation, unincorporated association, partnership or other form of business association."

¶24. Since Jennings meets the definition of the term "person," the State asserts that the statute should apply to her. The State also suggests that limiting the State's civil recovery to those offenders with legitimate credentials while exempting those with forged credentials is against the intent of the Legislature and "ludicrous." Considering that various Medicaid felonies can be committed by "persons" as well as "health care providers," we agree with the State. The language of the statute should not benefit unlicensed individuals who commit fraud while punishing those with legitimate credentials.

¶25. This issue is clearly procedurally barred because Jennings failed to raise it at an earlier time. At the same time, individuals who fraudulently forge credentials to receive a Medicaid provider number in order to commit Medicaid fraud should be subject to the same penalties as licensed offenders who commit Medicaid fraud. Therefore, the decision of the trial court is affirmed as to this issue.

### CONCLUSION

¶26. Jennings's double jeopardy argument is clearly precluded by the United States Supreme Court decision in ***Halper***. Jennings makes no other valid arguments, supporting most of her claims with a

one-sided and often erroneous interpretation of case law. Many of the cases cited are in direct opposition to the position proposed by Jennings.

¶27. Therefore, the decision of the trial court to impose a five-year prison sentence in addition to the civil penalty is affirmed by this Court.

**¶28. AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION.**

**BANKS, JUSTICE, CONCURRING IN PART:**

¶29. I concur in the result reached by the majority with respect to part IV. I disagree with the assertion made by the majority in the alternative that Jennings is covered by § 43-13-225 (1) by virtue of the use of the word "person" in § 43-13-225(2). This is a penal statute and it must be strictly construed. If the legislature wanted to use the term "person" in defining the conduct it should have done so. I agree that Jennings is procedurally barred from raising this issue and I therefore concur in the result.

1. The Act was amended by the False Claims Amendments Act of 1986, Pub.L. 99-562, 100 Stat. 3153, to increase the civil penalty to "not less than $5,000 and not more than $10,000 plus **3 times the amount of damages** which the Government sustains because of the act of that person," and "the costs of a civil action brought to recover any such penalty or damages." 31 U.S.C. § 3729(a)(7) (1982 ed., Supp. V). A penalty of treble damages was upheld in ***U.S. v. Boutte***, 907 F. Supp. 239 (E.D. Tex 1995), where the court found no double jeopardy violation under ***Halper*** for the imposition of treble damages under the Civil False Claims Act.