ROBERTS, J., for the Court.
¶ 1. This is an appeal of the Washington County Circuit Court’s decision to dismiss Robert Stanley Rowland’s motion for post-conviction relief. We are called upon to determine whether Rowland’s claim of a “fundamental” constitutional double jeopardy violation justifies waiver of three different statutory bars to post-conviction relief. For reasons later expressed, we decline the invitation.
¶ 2. More than thirty years ago, Rowland pled guilty to two counts of capital murder and two counts of armed robbery. A central factor in this case is that the two counts of capital murder were elevated to that status because the homicides were committed in the process of armed robberies. Rowland argued that the circuit court should vacate the two armed robbery convictions because the constitutional prohibition against double jeopardy precluded sentencing him for both armed robbery and capital murder. The circuit court found that, having pled guilty in 1979 to the charges at issue, Rowland’s motion was time-barred. Accordingly, the circuit court summarily dismissed Rowland’s motion without conducting an evidentiary hearing. Aggrieved, Rowland appeals and claims: (1) the trial court erred when it found his motion was time-barred, and (2) his guilty pleas and convictions for the two counts of capital murder and the two underlying counts of armed robbery violate the constitutional prohibitions against double jeopardy and are, therefore, the equivalent of illegal sentences. For reasons that will be elaborated on below, we find no error and affirm the judgment of the circuit court.
FACTS AND PROCEDURAL HISTORY
¶ 3. The record before this Court is scant at best, and must be reconstructed from events that transpired more than thirty years ago. On February 16, 1979, Rowland, Donald Keeton, and Keith Ouzts concealed their identities with masks and armed themselves with shotguns. That night, they went into the Leflore County Country Club where Pat Bolton, James Campbell, Billy Floyd, Joe Floyd, Paul Hughes, Steve McHann, G.W. Putnam, and O.B. Singleton were gathered playing poker.
*547 ¶4. Rowland and his co-defendants ordered the eight men attending the poker game to line up and face a wall. According to Rowland and his co-defendants, one of them reached across the poker table to pick up some money, and as he did so, his shotgun discharged, shooting Campbell in the back.[1] Campbell died as a result. At that point, Hughes ran, attempting to escape. He too was shot in the back as he attempted to run from the room. Hughes died as well.
¶ 5. Apparently, either Rowland or one of his two co-defendants took one of the victims’ car keys. Rowland and his co-defendants all escaped in the stolen car. Two of the armed robbery victims were able to discretely follow Rowland and his two co-defendants and they obtained a description sufficient to aid the authorities. All three defendants confessed to their heinous crimes.
¶ 6. Rowland, Keeton, and Ouzts were jointly indicted by a Leflore County grand jury on multiple indictments charging two capital murders and at least two armed robberies. Statutory authority for multi-count indictments was non-existent at that time. The record is incomplete, but it appears that there may well have been other armed robbery charges connected to other victims and other possible charges.
¶ 7. Due to pretrial publicity, the circuit court transferred venue to Washington County. Facing the possibility of being twice sentenced to death, Rowland decided to enter into plea negotiations with the district attorney’s office. In March 1979, George Everett was the district attorney who prosecuted Rowland and Rowland’s two co-defendants. A plea bargain was reached and Rowland pled guilty pursuant to that understanding. The Honorable B.B. Wilkes was the circuit judge who accepted Rowland’s guilty pleas. During the subsequent guilty plea hearing, the circuit court asked the district attorney to summarize the facts in the case.[2] The district attorney responded as follows:
On the night of February 16, 1979, a group of citizens was at the Leflore County Country Club, a short distance outside of Greenwood in Leflore County, Mississippi, at a social event, that social event being a poker game, when three individuals, masked and dressed similarly with their identification completely concealed and armed with shotguns, entered the room and proceeded to perform an armed robbery with firearms of this group of individuals. They had the *548 men line up against the wall of the building or the room with their backs toward the defendants. And as one of the defendants was reaching across the table where the game had been held to pick up the money, a shotgun that he was holding discharged and shot James Campbell in the back, and [sic] killing James Campbell. The shotgun then discharged again and the shot went into the ceiling of the room. At that time, Paul Hughes, one of the participants in the game, broke and ran to get out of the place and he was shot in the back and killed by one of the individuals in the robbery. They then secured an automobile from one of the participants in the game and made their getaway from the Country Club, which they abandoned a short distance away where they got in their own automobile. They were followed by two of the people involved in the game — discreetly followed — who got enough description to aid the authorities, which led to much hard work in the arrest of these three who all confessed to that crime.
¶ 8. Rowland and his two co-defendants were represented by counsel. They all were offered the same plea bargain. All three pled guilty to the capital murder of Campbell and Hughes. All three pled guilty to the armed robbery of Singleton and Bolton. For the two capital murder charges, the circuit court sentenced all three defendants to two consecutive life sentences.[3] The controlling law at that time made all three defendants eligible for parole consideration after they served ten years of each sentence. Miss.Code Ann. § 47-7-3(1) (1972).
¶ 9. For the two armed robbery pleas, the circuit court sentenced all three defendants to two twenty-four-year sentences to run consecutively to the sentences for capital murder and one another. Again, the controlling law at that time made all three defendants eligible for parole consideration on the armed robberies after serving the first ten years of each sentence. See Miss. Code Ann. § 47-7-3(l)(d)(i) (Rev.2004). It should be noted that Rowland and his two co-defendants got exactly the sentences for which they bargained.
¶ 10. On November 13, 2007, Rowland filed his most recent motion for post-conviction relief. Rowland requested that the circuit court vacate his two armed robbery convictions as violations of the constitutional prohibitions against double jeopardy. The circuit court found that Rowland’s motion was time-barred and summarily dismissed Rowland’s motion with prejudice. Rowland appeals. Importantly, Rowland makes no claim of any error in his two capital murder pleas that were part of his plea agreement with the prosecution. Logically, Rowland could have just as effectively attacked his capital murder sentences under a double jeopardy claim while allowing his armed robbery sentences to remain intact. If Rowland is correct and the armed robbery sentences must be vacated, he would be entitled to immediate parole eligibility.
STANDARD OF REVIEW
¶ 11. The standard of review applied by this Court when considering the appeal of a trial court’s decision to dismiss a motion for post-conviction relief is well settled. Williams v. State, 872 So.2d 711, 712(¶ 2) (Miss.Ct.App.2004). This Court will not *549 disturb the factual findings of the trial court unless they are found to be clearly erroneous. However, where questions of law are raised, this Court reviews them de novo. Id.
ANALYSIS
¶ 12. The Mississippi Uniform Post-Conviction Collateral Relief Act (MUP-CCRA) became law in 1984. The Mississippi Supreme Court has held that our state applies the MUPCCRA prospectively from its date of enactment, April 17, 1984. Odom v. State, 483 So.2d 343, 344 (Miss.1986). “Individuals convicted prior to April 17, 1984, ha[d] three (3) years from April 17, 1984, to file their petition for post[-]conviction relief.” Id. Rowland pled guilty in 1979, and he filed his current motion on November 13, 2007. Within his most recent motion for post-conviction relief, Rowland admitted that he had filed prior motions for post-conviction relief attacking his convictions, but he claims that he never attacked his convictions based on a double jeopardy argument. Rowland gives no reason for his failure to raise the double jeopardy issue in his first motion for post-conviction relief, much less his additional ones. Accordingly, Rowland must overcome the time bar as set forth in Mississippi Code Annotated section 99-39-5(2) (Rev.2007), the res judicata bar as set forth in Mississippi Code Annotated section 99-39-21 (Rev.2007), and the successive-writ bar established in Mississippi Code Annotated section 99-39-23(6) (Supp. 2008).
¶ 13. Rowland claims he should not be subject to the time bar or successive-writ bar established in Mississippi Code Annotated sections 99-39-5(2) and 99-39-23(6), respectively, because the right to be free from an illegal sentence is a “fundamental” right. However, Rowland attacks his armed robbery convictions, and we find that a twenty-four-year sentence for armed robbery is not an illegal sentence. The minimum sentence for armed robbery is three years in the custody of the Mississippi Department of Corrections (MDOC), and the maximum sentence is life imprisonment. Miss.Code Ann. § 97-3-79 (Rev. 2006). Rowland’s sentences can only be arguably considered “illegal” if one finds that those sentences, in conjunction with the capital murder sentences, are violations of the double jeopardy clause. Be that as it may, even if Rowland’s issue was whether he was subjected to an illegal sentence, pursuant to Mississippi Code Annotated section 99-39-21(1), a petitioner may waive such a claim. Payton v. State, 845 So.2d 713, 717(¶ 14) (Miss.Ct.App.2003) (“Because Payton did not raise [a claim that a sentence of five years of probation was illegal] at the time he was sentenced, he waived its consideration on a motion for post-conviction relief or an appeal from the denial therefrom.”)
¶ 14. There are certain codified exceptions to the time bar as provided by Mississippi Code Annotated section 99-39-5(2). The “fundamental rights” exception is not listed as one of those codified exceptions. Be that as it may, supreme court precedent dictates that “[e]rrors affecting fundamental constitutional rights may be excepted from procedural bars which would otherwise prohibit their consideration.” Luckett v. State, 582 So.2d 428, 430 (Miss.1991) (emphasis added). The supreme court’s discretionary may language implies that this Court has the discretion to consider when an otherwise procedurally barred “fundamental” constitutional right should or should not be considered on appeal.
¶ 15. The appellate courts of this state have spoken with conflicting voices on the issue of whether a possible double jeopardy violation is waived if not asserted at *550 trial or at the plea and whether a possible double jeopardy claim is such a “fundamental” constitutional right to justify waiver of procedural bars on post-conviction proceedings. It is elementary that “[t]he Double Jeopardy Clause of the Fifth Amendment provides that no person shall be ‘subject for the same offence to be twice put in jeopardy of life or limb.’ ” Jones v. Thomas, 491 U.S. 376, 380, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). The Mississippi Supreme Court has held that “the protection against double jeopardy is a fundamental right.” Graves v. State, 969 So.2d 845, 846-47(¶ 6) (Miss.2007). The supreme court’s decision in Graves suggests that Rowland should not be subjected to procedural bars. However, the analysis does not end here.
¶ 16. Mississippi Code Annotated section 99-39-21(1) provides as follows:
Failure by a prisoner to raise objections, defenses, claims, questions, issues, or errors either in fact or in law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws or the Constitution of the [Sjtate of Mississippi or of the United States, shall constitute a waiver thereof and shall be proeedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
(Emphasis added). The Mississippi Supreme Court has applied that waiver to double jeopardy claims. Mann v. State, 490 So.2d 910, 911 (Miss.1986) (the failure to raise a double jeopardy issue causes the issue to be proeedurally barred); see also Jennings v. State, 700 So.2d 1326, 1328 (¶¶ 10-11) (Miss.1997) (holding that a double jeopardy claim was barred due to a petitioner’s failure to make the argument during a guilty plea, sentencing, or during two prior post-conviction proceedings).
¶ 17. This Court has repeatedly followed the supreme court’s lead in that regard. Hoskins v. State, 934 So.2d 326, 330(¶ 9) (Miss.Ct.App.2006) (“the failure to address a double jeopardy claim at the trial court level concludes the issue, and it cannot be raised for the first time in a post-conviction relief motion”); Sessums v. State, 899 So.2d 903, 904(¶ 3) (Miss.Ct.App.2005) (the petitioner’s “double jeopardy claims are proeedurally barred ... [because the] [fjailure to address a claim of double jeopardy at trial concludes that issue, it cannot then be raised initially in a motion for post-conviction relief’); Brooks v. State, 832 So.2d 607, 610(¶ 10) (Miss.Ct.App.2002) (“Failure to address a claim of double jeopardy at trial concludes that issue, it cannot then be raised initially in a motion for post-conviction relief.”); Henley v. State, 749 So.2d 246, 249(¶ 11) (Miss.Ct.App.1999) (“Failure to address a claim of double jeopardy at trial concludes that issue, it cannot then be raised initially in a motion for post-conviction relief.”). Consequently, precedent dictates that it is possible to waive a double jeopardy violation.
¶ 18. Such a position makes abundant sense. “[A] valid guilty plea operates as a waiver of all non-jurisdictional rights or defects which include rights secured by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.” Hoskins, 934 So.2d at 330(¶ 9) (citing Anderson v. State, 577 So.2d 390, 391 (Miss.1991)). Specifically, the United States Supreme Court has held that a guilty plea operates as a waiver of the privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). When one pleads guilty, he or she waives the right to a trial by jury. Id. A guilty plea operates as a waiver of the right to confront one’s accusers. Id. If a defendant can waive his constitutional right to trial by jury, to con *551 front and cross-examine his accusing witnesses, his constitutional right to a speedy trial, his right to appeal, his constitutional right to the assistance of counsel, and his rights to untold other “fundamental” constitutional rights, there is no logical reason to distinguish double jeopardy from the same status.
¶ 19. What is commonly referred to as the “successive-writ bar” is found in Mississippi Code Annotated section 99-39-23(6), which sets forth that “any order dismissing the prisoner’s motion or otherwise denying relief under this article is a final judgment and shall be conclusive until reversed.” See also Freshwater v. State, 914 So.2d 328, 329(¶ 2) (Miss.Ct.App.2005). That prior judgment shall be a bar to a second or successive motion under the MUPCCRA. Miss.Code Ann. § 99-39-23(6). As stated by this Court:
Aside from insanity, (which only applies in death penalty cases), there are only two exceptions allowed for a prisoner to defeat the sueeessive[-]writ bar: (1) where there has been an intervening decision by the United States Supreme Court, or the Mississippi Supreme Court, in which the prisoner can show adversely affected the outcome of his conviction or sentence, or that he has newly discovered evidence which if it had been introduced at trial would have caused a different result, and (2) where the prisoner claims that his sentence has expired or his probation, parole, or conditional release has been unlawfully revoked.
Freshwater, 914 So.2d at 329(¶ 2) (emphasis added). If there are “only” two exceptions to the successive-writ bar, and neither of those exceptions apply to the facts of this case, then this Court must find that Rowland’s current motion for post-conviction relief is barred by the statutory prohibition against successive writs.
¶ 20. Applying our previously-mentioned discretionary authority, we decline to find that Rowland is exempt from the time bar. As mentioned above “[errors affecting fundamental constitutional rights may be excepted from procedural bars which would otherwise prohibit their consideration.” Luckett, 582 So.2d at 430 (emphasis added). Having found no guideline as to when this Court should or should not apply our discretionary authority to ignore the time bar, it is nonetheless elementary that an appellant must show good cause and actual prejudice to demonstrate that an issue should not be barred by res judicata, as set forth in Mississippi Code Annotated section 99-39-21(1). Operation of the discretionary “may” language as applied to the “fundamental rights” exception should carry the same burden. With those factors in mind, we decline to apply our discretionary authority to consider Rowland’s issue.
¶21. Two years prior to Rowland’s guilty pleas, the United States Supreme Court held that “[wjhen ... conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one.” Harris v. Oklahoma, 433 U.S. 682, 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Despite the holding in Harris, Rowland freely and voluntarily pled guilty in 1979-two years after the Supreme Court’s decision in Harris. Good cause does not arise when one delays thirty years in attacking his armed robbery convictions until he becomes eligible for parole on his murder convictions.[4] This is particularly true be *552 cause Rowland had a three-year window after the Legislature enacted the MUP-CCRA and he was charged with knowledge of the Harris decision. Even so, Rowland filed nothing during his window of opportunity.
¶ 22. Moreover, in 1979, no decision from the Mississippi Supreme Court existed demonstrating a double jeopardy problem with Mississippi’s capital murder statute and an underlying felony conviction. The first pronouncement of the problem appeared in 1992, when Meeks v. State, 604 So.2d 748, 754 (Miss.1992) was decided. It is reasonable to conclude that neither the district attorney, defense counsel, nor the circuit judge envisioned any double jeopardy issue in Rowland’s plea agreement. Had such an issue been recognized, modification of the plea agreement to two counts of premeditated murder and two armed robberies would have effectuated the same result with no double jeopardy issue involved.
¶23. There are also severe logistical problems involved that, under the circumstances, preclude granting relief. The underlying crimes occurred more than thirty years ago. Rowland waited twenty-five years after the enactment of the MUP-CCRA to file his motion. All of the evidence has very likely disappeared or been lost. The innocent victims, witnesses, district attorney, trial judge, court reporter, and other necessary witnesses have probably died, moved, or disappeared. Normally, a litigant who successfully obtains post-conviction relief and has his guilty plea and sentence invalidated is restored to the status he enjoyed prior to his plea. The State may place such a defendant on trial for the original charge in the grand jury indictment. As a practical matter, it is very likely now impossible for the State to prosecute Rowland on any crimes that arose from the underlying facts.
¶ 24. Additionally, Rowland suffered no actual prejudice by the sentences he bargained for and received. Rowland bargained to avoid two possible death sentences. He got exactly that for which he bargained. It is possible, if not likely, that through counsel Rowland chose to waive his rights against double jeopardy regardless of the fact that the pleas could be considered violations of the prohibition against double jeopardy. It is certainly within the realm of possibilities, if not probabilities, that Rowland willingly waived his double jeopardy protection in exchange for avoidance of two death sentences — especially since during the plea colloquy and prior to sentencing, the circuit court asked Rowland’s attorney whether he had gone over all of Rowland’s constitutional rights with Rowland and whether he understood the rights he was waiving. In Rowland’s presence, his attorney responded, “[y]es, sir.”
¶ 25. Of interest is the fact that the indictment for the armed robbery of Bolton states that the property taken — cash valued at over $100 — belonged to eight people: Singleton, Putnam, B. Floyd, Hughes, J. Floyd, Bolton, McHann, and Campbell. The indictment that charged Rowland with the armed robbery of Singleton stated that the property taken — • cash valued at more than $100 — belonged to the same eight men. The indictment that charged Rowland with capital murder of Campbell stated that Campbell was murdered during the armed robbery of Bolton and others. The indictment that charged Rowland with the capital murder *553 of Hughes stated that Hughes was murdered during the armed robbery of Singleton and others.
¶ 26. It is impossible to determine from the record currently before us whether the only money taken was the pile of money on the table, which apparently belonged to all eight victims, or whether Rowland and his two co-defendants took any other personal property from the eight victims in this case. However, it is reasonable to assume that Rowland and his two co-defendants took money, car keys, or property from the person or presence of the other individuals because the three defendants fled in a car that belonged to one of the victims. Therefore, one of the three defendants would have had to take the keys to that car from one of the victims. It appears that more than one armed robbery occurred because more than one person was placed in fear through the exhibition of a deadly weapon, and personal property was taken from his person or presence. Our armed robbery statute is found at Mississippi Code Annotated section 97-3-79 (Rev.2006). It appears that there were eight armed robberies that night since eight different people had personal property taken from their persons or presence by placing each in fear through the exhibition of a deadly weapon. Since the capital murder indictments stated that the murders of Campbell and Hughes occurred during the armed robberies of other unnamed victims (presumptively out of the group of people including Singleton, Bolton, Putnam, B. Floyd, Hughes, J. Floyd, and McHann), no double jeopardy violation may even exist. Stated differently, Rowland pled guilty to the armed robberies of Bolton and Singleton. He also pled guilty to the capital murders of Campbell and Hughes while committing armed robberies of un-named “other” people.
¶27. The dissent would remand this matter to the circuit court for an evidentia-ry hearing with instructions to “afterwards rule on [Rowland’s] double jeopardy/illegal sentence claim.” The dissent’s prospective instructions on remand may well prove impossible to obey. Just from whom is the circuit court expected to hear testimony? What evidence is the State expected to present at the evidentiary hearing? Is the circuit court expected to somehow resurrect matters that occurred over thirty years ago in a vain attempt to determine whether Rowland was actually subjected to a valid double jeopardy violation? Did Rowland waive any double jeopardy claim or was it even discussed with him by his then attorney? Does anybody even remember? A circuit court will be required to resolve these issues, and it will have an extremely difficult, if not impossible, task.
¶ 28. With utmost respect for the dissent, based on the totality of the circumstances, this Court declines to exercise whatever discretionary authority it may have to consider otherwise time-barred issues pursuant to the “fundamental rights” exception. Additionally, Rowland’s motion is clearly barred by Mississippi Code Annotated section 99-39-21(1) and the prohibition against successive writs. Accordingly, we find no error and affirm the judgment of the circuit court.
¶ 29. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE AND MYERS, P.JJ., IRVING, GRIFFIS AND MAXWELL, JJ., CONCUR. KING, C.J., DISSENTS *554 WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, ISHEE AND CARLTON, JJ.

. None of the three defendants ever specifically admitted to being the person who was holding the shotgun that, by their description, just happened to discharge at that moment. All three claimed that one of the others was the person who was holding the shotgun when it discharged.

. The guilty plea colloquy is not part of the record. Rowland attached it as an exhibit to his brief. This Court has noted that the Mississippi Supreme Court has "repeatedly stressed that the necessary transcripts are to be made part of the record, and that the appellant bears the burden of presenting a record which is sufficient to undergird his assignment of error.” Harwell v. State, 817 So.2d 598, 600(1111) (Miss.Ct.App.2002) (quoting Williams v. State, 522 So.2d 201, 209 (Miss.1988)). "[The appellate] Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record.” Fuselier v. State, 654 So.2d 519, 521 (Miss.1995) (citation omitted). However, the State has not moved to strike Rowland's inclusion of matters previously not included in the record. This statement should not be taken as criticism of the State's decision, as it is quite possible that the decision was a tactical one. In any event, we consider Rowland’s inclusion of the guilty plea colloquy to the extent that it sheds light on his claimed double jeopardy violation.

. In 1979, Mississippi law provided only two possible punishments for capital murder: life with the possibility of parole in ten years, or death. After July 1, 1994, the Mississippi Legislature provided the additional option of sentencing one found guilty of capital murder to life without parole. 1994 Miss. Laws, ch. 566, § 3.

. This opinion should not be construed as a finding that a failure to raise a double jeopar *552 dy claim at trial should always operate as a bar to it being raised later. As will be demonstrated, based on the particular facts of this specific case, this factor is merely one consideration among a totality of circumstances.