386 So.2d 1117 (1980)
Turner Paul SMITH
v.
STATE of Mississippi.
No. 51878.
Supreme Court of Mississippi.
August 13, 1980.
John M. Deakle, Hattiesburg, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
*1118 PATTERSON, Chief Justice, for the Court.
This appeal is from the Circuit Court of Forrest County wherein Turner Paul Smith, in a two-stage proceeding, was convicted of burglary and as an habitual offender was sentenced to life imprisonment.
The appeal was perfected as to the guilty verdict. The sentence as an habitual offender is not questioned. Smith contends the court erred (1) in admitting into evidence the physical evidence and the confession because they were the fruits of an unlawful search and seizure resulting from an arrest without probable cause; (2) in not allowing the defendant to make a timely opening statement to the jury and in permitting it to go unsupervised into the jury room after hearing the opening statements of the state, with no instructions as to discussion among themselves not to form opinions, bias, or prejudice; and (3) in allowing the confession of the defendant to be introduced into evidence because it was not freely and voluntarily given.
The record reveals that Smith was indicted as an habitual offender on December 1, 1978, for the April 3, 1978, burglary of Builders Supply Company in Hattiesburg. In this burglary a rifle, shotgun and a number of checks were stolen. No particular individual was arrested or suspected of the burglary prior to the following events.
On June 13, 1978, about ten weeks after the burglary of Builders Supply, Hattiesburg police officer Ezell was patrolling a high crime area in a plainly marked police car when at about 1:30 a.m. he received a radio communication from Lt. Dubose, his superior, informing Ezell that he was at the Martin Oldsmobile Paint Shop and had heard breaking glass at Courtesy Ford, evidently an automobile business. Ezell was instructed to investigate, and after doing so, reported to Dubose that he found no one in the vicinity of Courtesy Ford. Whereupon Dubose directed Ezell to leave the area and return later. Ezell complied and testified to the following:
[A]pproximately thirty or forty-five minutes later (2:45 a.m.) I came back and had my headlights off as I started checking Gibson's Discount, [and] as I rounded the rear of Gibson's I saw an individual in the back of Gibson's and when he saw me he turned and ran.
He explained that when first observed, the individual held a bag in his hand. Ezell flicked on his headlights and pursued the man into a dead-end alley behind Gibson's and a food store where he was overtaken at a garbage dump in the rear of the store. Ezell observed his quarry no longer had the bag, was perspiring heavily and appeared nervous. Upon request, the individual identified himself as Turner Paul Smith, handing an Alabama driver's license to Ezell, and when asked what he was doing in the area, replied, "... he was looking for some boxes to sleep on." After consulting with Lt. Dubose via radio, Ezell, on Dubose's "advice," arrested Smith for "attempted burglary" and took him to the police station. During the suppression hearing Smith explained his flight from the police car thusly: "To be honest, I always run from the law."
At this juncture the determination of whether there was probable cause is imperative because the "fruits" flowing from an arrest without probable cause cannot be used to strengthen the initial arrest. In McNeely v. State, 277 So.2d 435 (Miss. 1973), we stated:
The probable cause factor must be evaluated by the officer making the arrest by the facts and circumstances existing at the time of the arrest and it may not be later strengthened by what the search revealed.
(277 So.2d at 438)
Additionally, an arrest must be considered in conjunction with Mississippi Code Annotated section 99-3-7 (1972) which provides:
An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect *1119 and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.
"Probable cause" is indeed difficult to define or determine, but in McCollum v. State, 197 So.2d 252 (Miss. 1967), this Court said, citing Draper v. U.S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959):
"The existence of `probable cause' or `reasonable grounds' justifying an arrest without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case. The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest. Standards which may be reasonable for the apprehension of bank robbers may not be reasonable for the arrest of narcotic peddlers.
"`Probable cause' or `reasonable grounds' justifying an arrest without warrant exist where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a narcotics offense has been or is being committed. It is not required that probable cause be established solely by facts within the personal knowledge of the arresting officer. A combination of information and personal knowledge may raise the inference beyond opinion, suspicion, and conjecture to reasonable probability. All information in the agents possession, fair inferences therefrom, and observations made by him are pertinent." (197 So.2d at 254-55)
In applying these standards to the facts before us, we encounter much perplexity. There is little doubt but that a "stop and frisk" interception permitted by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), existed, but much doubt of probable cause for arrest. Stated differently, probable cause is required to make a lawful arrest, while only reasonable suspicion is required to stop and frisk. Terry, supra, and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
A brief restatement of the salient facts which would support probable cause follows: (1) The sound of breaking glass near Courtesy Ford; (2) the lateness of the hour; (3) Smith was the only person seen in the area; (4) other burglaries had occurred fairly recently in the area; (5) Smith fled when he saw the police car; (6) when arrested, he no longer had the bags; (7) he was perspiring heavily and appeared quite nervous; (8) the dubious explanation of seeking a box to sleep on, and (9) finally, people normally do not loiter in the rear of business establishments in the early hours of the morning.
As detracting from probable cause, we must consider (1) Smith was not a trespasser on private property; (2) no indictable offense was committed or a breach of the peace threatened or attempted in Ezell's presence; (3) Ezell had no knowledge that a felony had been committed; he knew only that Dubose had reported hearing "breaking glass"; (4) Courtesy Ford is one block from the place of arrest; (5) Ezell did not make an on-the-spot arrest, but did so on radio instructions from Dubose who was not present at the scene.
The trial court in considering this evidence, was of the opinion there was probable cause for the arrest and overruled the motion to suppress. We conclude that he did not err. In accord with McNeely, supra, the facts and circumstances existing at the time of the arrest are necessary to the determination of whether the seizure was unreasonable and without probable cause. In weighing the high crime area that Ezell was patrolling, the early morning *1120 hour, the sound of breaking glass, the furtive actions of Smith (flight, disposal of the bag, dubious explanation for his presence at the garbage dump), nervousness, and the absence of others in the area, were sufficient, in our opinion to "warrant a man of reasonable caution in the belief that an offense has been committed." Carroll v. U.S., 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, as cited with approval in Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964).[1] So therefore we cannot say that the seizure of Smith was unreasonable. For these reasons we conclude the trial court did not err in overruling the motion to suppress.
Upon Smith's arrest and escort to the police station, a search of his person revealed two forged Builders Supply checks in his sock coinciding in number (Nos. 46538 and 46539) with two of the checks reported missing the morning after Builders Supply was burglarized. Although no rifle and shotgun were found when Smith was searched, he confessed to stealing a rifle and shotgun from Builders Supply and stashing them near some lumber behind the business where they had been previously found by an employee of Builders Supply. He also confessed to taking the checks and trying to burglarize the safe. His statements corresponded with the evidence revealed by police investigation of Builders Supply shortly after the burglary.
He next asserts that he was not allowed to make a timely opening statement and the trial court improperly recessed the jury without adequate supervision. This is without merit because it was the defendant's own motion which necessitated the delay of his opening statement and the inexpedient recess of the jury. Furthermore, the time for making opening statement is discretionary with the trial judge and will not be reversed absent a clear showing of abuse of discretion or substantial injury. Black v. State, 308 So.2d 79 (Miss. 1975).
Also assigned as error was the admission into evidence of the confession because it was allegedly obtained through coercion and promises of leniency. The fifth amendment challenge to the confession as involuntarily made is not well taken. On the motion to suppress, the State made out a prima facie case of voluntariness by showing that Smith was twice given Miranda warnings, signed a waiver before making his statement, and was not coerced or offered reward for his confession. Then Smith testified that his confession was extracted through psychological coercion and promises of time running concurrently with another charge. Subsequently, the State offered the testimony of all persons present at the time of Smith's statement to prove that no coercion or offers of reward were made as an inducement for the confession. Thus, the giving of Miranda warnings, Smith's waiver, and the State's compliance with the rule in Agee v. State, 185 So.2d 671 (Miss. 1966), plus the conflicting testimony, created an issue for the court's resolution. The court determined the confession to be voluntary from this evidence and we cannot state it erred in this decision.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] In the Beck case the U.S. Supreme Court held no probable cause existed where the arrest without a warrant was based on a police picture and past criminal record of the arrestee. But see Draper v. U.S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), where probable cause existed to make a warrantless arrest where a reliable informer gave officers corroborated information that Draper, a narcotics peddler, would arrive on a certain train carrying a tan zipper bag containing three ounces of heroin and also provided a detailed physical description of Draper, i.e., a Negro of light brown complexion, 5' 8" tall, weighing 160 pounds, and wearing a light colored raincoat, brown slacks and black shoes.