# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-01097-COA

**ELIJAH T. HALL A/K/A ELIJAH HALL**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/2022 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELIJAH T. HALL (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ASHLEY LAUREN SULSER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 08/29/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1. Elijah Hall was indicted as a habitual offender for first-degree murder and possession of a weapon by a felon, standing accused of murdering Joyce Haynes. On March 12, 2018, he plead guilty to the lesser charge of second-degree murder for the killing of Ms. Haynes, without the habitual enhancement, and with the possession charge "retired to the files." He was sentenced to be incarcerated for 25 years.

¶2. Not long after, in October of the same year, Hall petitioned for post-conviction relief, alleging a host of errors with his indictment, his counsel, and other matters. In a 2019 order, the trial court found his PCR was without merit, not supported by proof, and belied by his statements at his guilty plea, where he admitted his guilt in the killing of Ms. Haynes.

¶3.　　In 2022, over three years after his guilty plea, Hall filed a new series of motions before the trial court. In these, he alleged being misled by his lawyer into pleading guilty due to a representation that he would serve less time, that his lawyer had coaxed him into pleading by telling him he would be eligible for parole, and that he should have been evaluated for mental competency before taking the plea. As a result, Hall argued his retained counsel was ineffective and his plea was involuntary. In a subsequent filing, he argued his petition "should be exempt from all bars inherent" to the PCR statutes "for violations to Mr. Hall[']s fundamental rights."

¶4.　　The trial court found Hall's petition was filed over a year outside the period allowed to file a PCR, and dismissed the case as time-barred. "Notwithstanding the time bar, the petitioner's claims lack merit," the trial court reasoned, detailing why a mental evaluation was not required before Hall's plea (because he withdrew the motion for such an exam, and the trial court believed he had been malingering to obtain such an exam in the first place), that his lawyer had not been ineffective, and that the guilty plea was not involuntary, as he had been repeatedly told he would be sentenced to 25 years. Indeed, during the plea colloquy, the trial court had asked Hall, "[I]t's my intention to sentence you to twenty-five years to serve. Do you understand that?" The petitioner had said, "Yes, sir."

¶5.　　Hall appealed and the case was assigned to us for review. He re-urges these same three issues, and in response, the State argues the time-bar should be applied.[1]

---

[1] This case began with a filing by Hall on May 23, 2022. Indeed, the trial court calculated the running of the statute of limitations from the exact date. While Hall designated the entirety of the record, it appears the first few filings from his case are absent from the certified record. Nonetheless, neither Hall nor the State has sought a correction or

¶6. "When reviewing a trial court's denial or dismissal of a PCR petition, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Cuevas v. State*, 304 So. 3d 1163, 1167 (¶19) (Miss. Ct. App. 2020). In the case of a guilty plea, PCR claims must be made "within three (3) years after entry of the judgment of conviction." Miss. Code Ann. § 99-39-5(2) (Rev. 2020). The Mississippi Supreme Court has held that PCR claims are time-barred if filed beyond the three-year time period unless the claim fits within one of the express statutory exceptions. *Howell v. State*, 358 So. 3d 613, 615-16 (¶¶8, 12) (Miss. 2023).

¶7. These express statutory exceptions include "an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence"; new evidence which was "not reasonably discoverable at the time of trial"; if "there exists biological evidence not tested" or subject to new "DNA testing" that would have impacted the conviction or sentence; or where a movant's "sentence has expired or his probation, parole or conditional release has been unlawfully revoked." Miss. Code Ann. § 99-39-5(2)(a)-(b).

¶8. Hall's trio of claims were filed a year beyond the three-year window after his 2018 guilty plea. They are not subject to any of the exceptions. As we have previously held in another PCR case, a petitioner "must *prove* an exception applies." *Bell v. State*, 207 So. 3d 705, 707 (¶6) (Miss. Ct. App. 2016) (emphasis added). Because Hall has not proved that a

---

modification of the record, *see* MRAP 10(e), the petitioner's arguments on appeal track those addressed by the circuit court in its order dismissing the petition, and our threshold inquiry is whether the time-bar halts consideration of the merits.

statutory exception applies to his claims, and they were filed after the running of the three-year statute of limitations, the trial court properly dismissed his PCR motion as time-barred.

¶9. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; BARNES, C.J., AND McCARTY, J., JOIN IN PART. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶10. The majority concludes that because Hall's motion for post-conviction collateral relief (PCR) was filed more than three years after the date of his sentence, and none of the express statutory time-bar exceptions apply, then this Court is barred from addressing Hall's mental incompetence claim on the merits. Although I agree with the disposition of this case because I respect our Supreme Court's recent decision in *Howell v. State*, 358 So. 3d 613, 615-16 (¶¶8, 12) (Miss. 2023), I write separately because, in my view, the inquiry does not end there.

¶11. Clearly, there are intrinsic constitutional circumstances that lift (or usurp) the statutory time-bar. Miss. Code Ann. § 99-39-5(2) (Rev. 2020). The Supreme Court stated as much in *Howell*:

> We acknowledge that other arguments may be used to attack the constitutionality of the statutory bars, *either as applied to particular cases or on their face*, and we have no intent to address their validity one way or the other here. We further recognize that, *in specific cases*, other arguments or doctrines, e.g., equitable tolling, might be available to afford relief from the statute of limitations.

*Howell*, 358 So. 3d at 616 (¶12) (emphasis added).[2]  Following *Howell*'s admission to its logical end, I write to propose that the three-year time-bar, as applied after *Howell*, may violate the right to substantive due process.  The question is whether section 99-39-5(2) of the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA)[3] may offend the due process clause of the Fifth and Fourteenth Amendments of the United States, as applied in certain cases, by infringing upon a prisoner's right to petition for post-conviction collateral relief. *See* Miss. Const. art. 3, § 24 ("All courts shall be open; and every person for an injury done him in his . . . person, or reputation, shall have remedy by due course of law[.]"); *State v. McPhail*, 182 Miss. 360, 180 So. 387, 392 (1938) (Section 24 is meant to grant "a judicial remedy for every unlawful violation of any one of the named rights."); *accord* U.S. Const. amend. 1 ("Congress shall make no law . . . abridging . . . the right . . . to petition the Government for a redress of grievances."); Miss. Const. art. 3, § 11 ("The right . . . to . . . petition the government . . . shall never be impaired."); *cf. BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) ("[T]he right of access to the courts is . . . but one aspect of the right of petition.").

¶12.    "[T]he Due Process Clause—in addition to setting procedural minima for deprivations

---

[2] Equitable tolling of a statute of limitations is not a new concept.  The United States Supreme Court applied the principle in *Holland v. Florida*, 560 U.S. 631, 645-49 (2010), to federal habeas corpus applications filed after the one-year time limitation in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), in part because the "writ of habeas corpus plays a vital role in protecting constitutional rights," and the process of bringing a federal habeas claim after exhausting state court remedies generally takes longer than a year. *See Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).

[3] Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2020).

of life, liberty, or property—bars outright 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Brennan v. Steward*, 834 F.2d 1248, 1255 (5th Cir. 1988). One form of substantive due process is the idea that those rights explicitly provided for in the Bill of Rights are "'implicit in the concept of ordered liberty' (and only those rights) are protected against state intrusion by the Due Process Clause." *Id*. at 1256. "Where a right is either explicitly or implicitly guaranteed by the constitution, that right is 'fundamental.'" *King v. Miss. Dep't of Corr*., 721 So. 2d 1126, 1129 (¶13) (Miss. Ct. App. 1998). "If a right is fundamental, strict scrutiny applies." *Franklin v. United States*, 49 F.4th 429, 435 (5th Cir. 2022) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

¶13. Substantive due process prohibits "the government . . . infringe[ment] . . . [of] 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington*, 521 U.S. at 721. When a petitioner claims their due process rights have been infringed, the petitioner must provide a "careful description" of the asserted fundamental liberty interest that is implicated. *Id.* Our courts begin the analysis "by examining our Nation's history, legal traditions, and practices." *Id*. at 710. An analysis of this history is necessary because "neither liberty nor justice would exist if [the rights] were sacrificed." *Id*. at 721. Only then will the Court apply strict scrutiny. *Id*.

I.

¶14. Few rights are more fundamental than the right to petition the courts for redress of

wrongs. *See Chrissy F. ex rel. Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 851 (5th Cir. 1991) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses."). The coined phrase "due process of law" that is the cornerstone of our Fifth and Fourteenth Amendments has become shorthand for what stems from the historical words that "[n]o free man shall be arrested or imprisoned . . . or outlawed or exiled or in any way victimised . . . except by the lawful judgment of his peers or by the law of the land." Magna Carta cl. 39 (1215). The experience before the Magna Carta signified the importance of having a written charter of individual liberties the King would swear to respect. *See id.* at cls. 1, 60. Commonly referred to as the "Great Charter," it is historically accepted that this document of liberties was among the first legal recordings of the right to due process of law. *See Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 276 (1855). From the Great Charter came the right to petition elected barons or a chief justice for redress. Magna Carta cl. 61 (1215). This is evident from the Petition of Right in 1628, issued by the English Parliament, which solidified the personal liberty right not to be imprisoned except "by the law of the land." *See Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022). And the English Bill of Rights of 1689 stated "that it is the right of the subject to petition the King, and all commitments and prosecutions for such petitioning are illegal."[4]

¶15. Meanwhile, the Habeas Corpus Act of 1679 served as the vehicle to protect individuals against unlawful imprisonment and prolonged detention. Theodore F.T.

---

[4] Lillian Goldman Law Library, The Avalon Project, The English Bill of Rights 1689 (2008), https://avalon.law.yale.edu/17th_century/england.asp.

Plucknett, *A Concise History of the Common Law*, 56-58 (2d ed. 1936). It still does. The writ of habeas corpus is a centuries-old device entrusted to courts to preserve an individual's right to liberty. *See* U.S. Const. art. 1, § 9, cl. 2 (1789); Magna Carta cl. 39 (1215); King Henry II, Assize of Clarendon (1166) (requiring sheriffs to bring arrested men before justices in county courts). This right was considered inherent in the person, not incidental to being part of a society. 1 William Blackstone, Commentaries on the Laws of England 123 (1753); *accord Somerset v. Stewart*, 98 Eng. Rep. 499, 510 (1772). A person's liberty continues as a natural right—it is not derived from a constitution but, rather, is protected by restraints on power. Blackstone, *supra*, at 123-24; *see Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983) ("[T]he Constitution is a charter of negative rather than positive liberties."). In other words, the law facilitates what is right and prohibits what is wrong, but it is the individual who is endowed with the ability to know the difference. *See* Blackstone, *supra*, at 121-22.

¶16.    In addition, the writ of error and writ of error coram nobis also provided prisoners with the ability to seek redress of errors of law and fact.[5] The ordinary writ of error

---

[5] In *Fugitt v. State*, 85 Miss. 94, 37 So. 554 (1904), our Mississippi Supreme Court distinguished the writ of error from the writ of error coram nobis by stating:

> When the object of the writ is to remove a judgment from an inferior into a superior court for review and the correction of errors of law or fact, it is called a 'writ of error' only—nothing more. But when the object of the writ is to correct an error of fact in the same court that rendered the judgment, it is called a writ of 'error coram nobis' if it be in the King's Bench, and a 'writ of error coram vobis' if it be in the common pleas.

*Id*. at 555. The writ of error coram nobis was reserved for "errors of fact, and for errors in the process, or through the default of the clerks." *Id*. "The judgment for plaintiff for an

permitted prisoners to have the record of their cases reviewed in a higher court mainly for errors of law.[6] Alternatively, "[t]he writ of [error] *coram nobis* was available at common law to correct errors of fact." *United States. v. Morgan*, 346 U.S. 502, 507 (1954) (emphasis added).[7] In *Morgan*, the United States Supreme Court proclaimed that it had "the power to remedy an invalid sentence"; therefore, the "respondent [was] entitled to an opportunity to attempt to show that this conviction was invalid." *Id*. Impliedly, the Court recognized prisoners' right to collaterally attack their convictions and expanded the scope of the writ.[8] *Id*. at 511-12.

¶17.  The procedure under which a prisoner could seek post-conviction relief in Mississippi was slightly different.  In Mississippi, the writ of habeas corpus performed the limited function of releasing a prisoner on bail before conviction or pending appeal for void

---

error of fact on a writ coram nobis or coram vobis is that the judgment be revoked; on a writ of error, that it be reversed." *Id*.

[6] For more information, see Morgan Prickett, *The Writ of Error Coram Nobis in California*, 30 Santa Clara L. Rev. 1, 3-6 (1990).

[7] The Supreme Court of Nevada discussed the difference between the common law approach to the writ of error coram nobis and the approach in *Morgan*. The Nevada Supreme Court suggested that the scope of the coram nobis at common law was limited to *in personam* issues, such as "the competency of the defendant at the time of the plea or trial." *Trujillo v. State*, 310 P.3d 594, 601 (Nev. 2013); *see Morgan*, 346 U.S. at 507 (The phrase "errors of fact" meant those "facts that affect the 'validity and regularity' of the judgment.").

[8] The writ of habeas corpus in federal law had also been expanded to include "those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights." *Rogers v. Jones*, 240 Miss. 610, 128 So. 2d 547, 615 (1961) (quoting *Waley v. Johnston*, 316 U.S. 101, 105 (1942) (habeas application alleging guilty plea was coerced by an officer)).

judgments or for lack of jurisdiction. *Walker v. State*, 555 So. 2d 738, 740-42 (Miss. 1990); *Keller v. Romero*, 303 So. 2d 481, 483-84 (Miss. 1974); *McLemore v. Love*, 197 Miss. 273, 19 So. 2d 828, 828 (1944); *Kelly v. Douglas*, 164 Miss. 153, 144 So. 237, 237-38 (1932); *Wray v. Kelly*, 98 Miss. 172, 53 So. 492, 493 (1910); *Ex parte Burden*, 92 Miss. 14, 45 So. 1, 1-2 (1907); *Ex parte Walker*, 53 Miss. 366, 367 (1876). Whereas the writ of error coram nobis afforded prisoners an avenue to raise constitutional violations. *See Clayton v. State*, 254 So. 2d 874, 875 (Miss. 1971); *State v. Nicholson*, 286 So. 2d 820, 821-22 (Miss. 1973); *Smith v. State*, 155 So. 2d 494, 495 (Miss. 1963); *Rogers v. Jones*, 240 Miss. 610, 128 So. 2d 547, 551-52 (1961). "[T]he writ coram nobis [(it is said)] has always been recognized in our state as a common-law remedy in appropriate cases." *Howie v. State*, 121 Miss. 197, 83 So. 158, 161 (1919), *overruled in part by Mitchell v. State*, 179 Miss. 814, 176 So. 743, 744-46 (1937). "Justification for the writ [was] properly founded upon the inherent power of the court over its judgments and proceedings." *Id*. at 161.[9] While the purpose of the writ was to correct errors of fact "unknown at the time of trial [or plea] to the party seeking relief," the writ could not be invoked "where other remedies [were] available." *Rogers*, 128 So. 2d at 551. "[W]here a judgment of conviction was pending in the Supreme Court and defendant brought a coram nobis proceeding in the trial court, which was dismissed," the court possessed the inherent power to "permit a hearing on the merits of the coram nobis application." *Id*. at 552 (citing *Wetzel v. State*, 225 Miss. 450, 483, 76 So. 2d 194, 198

---

[9] The Court further discussed other inherent powers possessed by the judiciary to (1) question the constitutionality of statutes, (2) "prevent the abuse of their authority or process, and [(3)] to enforce obedience to their mandates." *Howie*, 83 So. at 161 (citing *Sanders v. State*, 85 Ind. 318, 328 (1882)).

(1954)).

¶18. For example, in *Howie,* the prisoner with a death sentence raised by petition that he was insane at the time of trial. *Howie,* 83 So. at 159. Because the Court found that a circuit court judge had the power to issue writs of error coram nobis where it appeared that the prisoner was insane, the Court reversed the circuit court's acceptance of a demurrer and remanded the case for further proceedings. *Id.* at 161; *cf. Fugitt,* 37 So. at 555.

¶19. The same relief could be obtained by a prisoner's filing a motion to vacate or set aside the conviction or for a new trial. *Pet. of Broom,* 251 Miss. 25, 30, 168 So. 2d 44, 47 (1964). "Th[e] practice was both simple and convenient." *Id.* Thus, the writ of error coram nobis soon became obsolete. *Id.* (citing *Carraway v. State,* 163 Miss. 639, 141 So. 342 (1932)).

¶20. In sum, regardless of the procedural vehicle chosen and the scope of each vehicle, our nation's practice and our State's history have recognized the right of a prisoner to have a meaningful opportunity to be heard post-conviction. *See id.* at 46. Furthermore, as a whole, the law of the land traditionally valued and accepted the bedrock principle that a prisoner has a right to collaterally attack his conviction or sentence to protect his liberty interest by "correct[ing] an infringement of the constitutional rights of an accused." *Id.* at 33 (citing 24 C.J.S. *Criminal Law* § 1606(2), at 666-67). In *Broom*'s case, our Supreme Court proclaimed that

> a prisoner in the custody of the state, claiming the right to be released or to a new trial upon the ground that his sentence was imposed in violation of the Constitution of the United States or the State of Mississippi, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or

11

correct the sentence and grant a new trial, or may file a petition of like nature for a writ of error coram nobis for similar relief. Under the procedures long recognized by this state, the sentencing court after hearing may determine the issues and make findings of fact and conclusions of law with respect to them.

*Id*. (citations omitted).

¶21. But due to the confusion caused by the varied paths a prisoner could take in seeking this relief, our Mississippi Legislature purposefully codified this process by enacting the UPCCRA. The UPCCRA abolished "the common law writs relating to post-conviction collateral relief," including habeas corpus and error coram nobis. Miss. Code Ann. § 99-39-3(1) (Rev. 2020); *Jenkins v. State*, 159 So. 3d 608, 609 (¶5) (Miss. Ct. App. 2015); *Cook v. State*, 301 So. 3d 766, 775 (¶22) (Miss. Ct. App. 2020); 6 Jeffrey Jackson et al., *Encyclopedia of Mississippi Law* § 56:3 (2d ed. updated Oct. 2022). As so eloquently stated in *Culberson v. State*, 612 So. 2d 342, 346 (Miss. 1992), our Legislature "merg[ed] our *coram nobis* procedure with constitutional habeas corpus, flavored with newly expanded theories of inherent judicial power, and garnished with due process."

¶22. After the enactment of the UPCCRA, a line of cases recognized that the statutory bars could operate to sustain a miscarriage of justice in certain circumstances by letting unlawful convictions or sentences lie. *E.g.*, *Fulgham v. State*, 47 So. 3d 698, 700 (¶6) (Miss. 2010); *Stevenson v. State*, 674 So. 2d 501, 505-06 (Miss. 1996). Consequently, when justice required, our appellate courts would excuse the statute of limitations or the procedural rule requiring that issues not be raised for the first time on appellate review. Our Supreme Court held that "[e]rrors affecting fundamental constitutional rights *may* be excepted from procedural bars which would otherwise prohibit their consideration, and this case discloses

12

a denial of due process in sentencing." *Luckett v. State*, 582 So. 2d 428, 430 (Miss. 1991),

*overruled on other grounds by Bester v. State*, 188 So. 3d 526, 529-30 (¶10) (Miss. 2016).

In *Luckett*, the defendant pled guilty to forcible rape in 1980 and was sentenced by the trial

court to life imprisonment. *Id*. at 429. Nine years later, the defendant filed a motion to

vacate or set aside his conviction. *Id*. Although his PCR motion was indeed time-barred

under Mississippi Code Annotated section 99-39-5(2),[10] our Supreme Court addressed

Luckett's allegedly erroneous life sentence anyhow because the Legislature had explicitly

given the power to issue a life sentence to the jury. *Id*. at 430 (citing Miss. Code Ann. § 97-

3-65 (Supp. 1980)). Because the trial court did not sentence "[Luckett] to a definite term

reasonably expected to be less than life," our Supreme Court impliedly held that Luckett's

---

[10] A motion for relief under this chapter shall be made within three (3) years after the time in which the petitioner's direct appeal is ruled upon by the supreme court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of the judgment of conviction. Excepted from this three-year statute of limitations are those cases in which the petitioner can demonstrate either that there has been an intervening decision of the supreme court of either the state of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.

Miss. Code Ann. § 99-39-5(2) (Supp. 1984).

13

PCR motion was "excepted from the time limitation. . . ." *Id.*

¶23.　　The *Luckett* decision derived from a principle held in *Smith v. State*, 477 So. 2d 191, 195 (Miss. 1985): "errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal." *Id.* (citing *Read v. State*, 430 So. 2d 832, 838 (Miss. 1983); *Brooks v. State*, 209 Miss. 150, 155, 46 So. 2d 94, 97 (1950)). In *Smith*, the applicable statute was section 99-39-21,[11] which, unlike section 99-39-5(2), expressly provided that the failure to raise constitutional issues at trial or on appeal constitutes as a waiver; however, the Court could grant relief from the waiver "upon a showing of cause and actual prejudice." *Smith*, 477 So. 2d at 195 (quoting § 99-39-21). Thus, in *Smith*, when presented with a scenario in which the defendant had been erroneously sentenced to life imprisonment as a habitual offender, our Supreme Court held that there was a "denial of due process in sentencing." *Id.* Specifically, the Court recognized

---

[11]　　(1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

　　(2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

Miss. Code Ann. § 99-39-21 (Supp. 1984).

that "[t]he comparison of a seven year sentence, as opposed to a life sentence, without probation or parole is too significant a deprivation of liberty to be subjected to a procedural bar." *Id*. Through plain error review, the Court addressed the issue and reversed a portion of Smith's sentence. *Id*.

¶24.  What is most important about *Smith* is that unlike *Luckett*, the defendant in *Smith* was tried and convicted, and he appealed his conviction. *Id.* at 192.  On appeal, Smith's conviction was affirmed. *Id*. (citing *Smith v. State*, 386 So. 2d 1117, 1118 (Miss. 1980)). More than four years later, Smith filed a motion to correct his sentence. *Id*.  The court did not address the fact that his motion to correct the sentence was brought more than three years after the appeal. *See* Miss. Code Ann. § 99-39-5(2) (Supp. 1984).

¶25.  Armed with both *Luckett* and *Smith*, our Supreme Court held once again in *Ivy v. State*, 731 So. 2d 601, 603 (¶13) (Miss. 1999), that "errors affecting fundamental constitutional rights, such as the right to a legal sentence, *may* be excepted from procedural bars which would otherwise prevent their consideration." (Emphasis added).  Even though the prisoner, Jessie Lee Ivy, did not file a motion for relief within the three-year time period, the court held that because Ivy had "alleged he was serving time under an illegal sentence[,] [he] was . . . not subject to the time bar." *Id*. at (¶14).  As a result, the court remanded Ivy's motion to be reviewed on the merits. *Id*. at 604 (¶21).

¶26.  Then, in a seminal case, our Supreme Court made clear that the trial courts had the power to review claims related to a defendant's fundamental rights despite the UPCCRA's litigation bars. *Rowland v. State* (*Rowland I*), 42 So. 3d 503, 506 (¶9) (Miss. 2010).  In that

15

case, Robert Rowland pled guilty to two armed robberies and two capital murders. *Id*. at 504

(¶3). Rowland had been sentenced to life imprisonment for each capital murder conviction

and to serve two twenty-four year terms for the armed robberies. *Id*. at 505 (¶3). More than

twenty-eight years later, Rowland filed a PCR motion raising a double jeopardy challenge.

*Id*. at (¶4). The circuit court dismissed Rowland's PCR motion as time-barred. *Id*. at (¶5).

The Court of Appeals, when reviewing Rowland's appeal from the order of dismissal,

acknowledged *Luckett* but decided not to apply the exception because the language of the

caselaw was discretionary. *Id*. at 506 (¶7) (citing *Rowland v. State*, 42 So. 3d 545, 549-50

(Miss. Ct. App. 2009)). Rowland petitioned our Supreme Court for a writ of certiorari.

¶27. Our Supreme Court unequivocally held "that errors affecting fundamental

constitutional rights are excepted from the *procedural* bars of the UPCCRA." *Id.* at 506 (¶9)

(emphasis added). Our Supreme Court came to this conclusion by relying on *Brooks*, 209

Miss. at 155, 46 So. 2d at 97, where the Supreme Court emphasized:

> Constitutional rights in serious criminal cases rise above mere rules of procedure. Errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal.
>
> Besides, no person can be deprived of his liberty except by due process of law. Section 14, Article 3, Mississippi Constitution. This prohibition is intended to guarantee the protection of fundamental and constitutional rights, so that a fair trial shall result. Every person is entitled to a fair and impartial trial, and the dispensing of justice is the object of courts. Thus, where fundamental and constitutional rights are ignored, due process does not exist, and a fair trial in contemplation of law cannot be had. . . .

Thus, the Court reversed and remanded the case for an evidentiary hearing. *Rowland I*, 42

So. 3d at 508 (¶15).

16

¶28. On remand, the circuit court denied Rowland's PCR motion after reviewing his double jeopardy claim on the merits. *Rowland v. State* (*Rowland II*), 98 So. 3d 1032, 1036 (¶7) (Miss. 2012). Faced with Rowland's appeal once more, our Supreme Court considered Mississippi Code Annotated sections 99-39-5(2) (time-bar), 99-39-21 (waiver and res judicata), and 99-39-23(6) (successive-motions bar) together. *Id*. at 1035 (¶5) (citing §§ 99-39-5(2), 99-39-21 & 99-39-23(6) (Rev. 2007)). The Supreme Court held that the circuit court erred by denying Rowland's PCR motion. *Id*. at 1039 (¶14). The Supreme Court addressed Rowland's appeal from the order denying his untimely PCR motion on the merits, concluded that Rowland had been placed in double jeopardy, and vacated his armed robbery convictions. *Id*.

¶29. More than a decade later, our Supreme Court changed its mind. In *Howell*, Marlon Howell pled guilty to possession of a controlled substance in 1999. *Howell*, 358 So. 3d at 614 (¶2). Howell was sentenced to serve three years in custody, "with one year of house arrest and the remaining two years of post-release supervision . . . ." *Id*. In 2016 (over fifteen years after his sentencing), Howell moved to vacate his sentence. *Id*. at (¶3). The circuit court, finding that Howell lacked standing to file a motion to vacate because "he had already completed his sentence for drug possession," dismissed his motion. *Id*. at (¶4). Howell appealed to the Supreme Court. *Id*. Our Supreme Court found that he had standing to file the motion under section 99-39-5(1).[12] *Id*. On remand, the circuit court denied

---

[12]    (1) Any person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated, civilly committed, on parole or probation or subject to sex offender registration for the period of the registration or for the first five

Howell's motion as time-barred. *Id.* Howell appealed. The Supreme Court affirmed the order finding that Howell's PCR motion was time-barred. *Id.*

¶30.    *Howell* specifically "overrule[d] *Rowland I*, 42 So. 3d 503, *Rowland II*, 98 So. 3d 1032, and any other case in which the Mississippi Supreme Court has held that the courts of Mississippi can apply the judicially crafted fundamental-rights exception to *constitutional, substantive* enactments of the Legislature such as the three-year statute of limitations applicable to petitions for post-conviction relief." *Id.* at 615 (¶8) (emphasis added).

¶31.    Our Supreme Court then reasoned that the statute-of-limitations provision, section 99-39-5(2), was not a "procedural law" because "[t]he Legislature has no Constitutional authority to enact rules of procedure . . . ." *Id.* at (¶9). Rather, according to the Supreme Court, section 99-39-5(2) is "substantive" law, not procedural. *Id.* at 616 (¶10). Therefore, "judicial procedure in the face of claims of fundamental rights [held] no weight." *Id.*

II.

¶32.    I am gravely concerned about section 99-39-5(2)'s constitutionality now. Our Legislature has, by *Howell*'s strict application of the time-bar, arbitrarily constrained a prisoner's right to seek post-conviction collateral relief and encroached on the court's power to correct judgments. As depicted by Blackstone in his commentaries, the right to personal

---

(5) years of the registration, whichever is the shorter period, may file a motion to vacate, set aside or correct the judgment or sentence, a motion to request forensic DNA testing of biological evidence, or a motion for an out-of-time appeal if the person claims. . . .

Miss. Code Ann. § 99-39-5(1) (Rev. 2020).

liberty is a "principal absolute" right inherent in every person. Blackstone, *supra* ¶15, at 136. According to Blackstone, this right would carry little meaning "if the constitution had provided no other method to secure [its] actual enjoyment." *Id*. The other methods included the "auxiliary subordinate rights of the subject . . . to protect and maintain" the right to personal liberty. *Id*. Two subordinate rights expressly mentioned are the right to apply to the courts for redress and the right to petition the king or the House of Parliament. *Id*. at 137-38. Thus, individuals had the right to enforce the inherent due process right to liberty when violated. *Id*. at 131-33.

¶33. Likewise, our Mississippi Supreme Court has long since adopted the principle that "Due Process requires adequate post conviction remedies." *Pet. of Broom*, 168 So. 2d at 46. But the strict application of section 99-39-5(2), post-*Howell*, appears to run afoul of the prisoner's individual liberty interest and the right to meaningfully access the courts to collaterally attack (redress) his conviction or sentence. The three-year time-bar under section 99-39-5(2) should not foreclose prisoners to the right to access the courts and the opportunity to be heard on the merits when there is doubt as to the constitutional validity of their conviction or incarceration. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) ("Given a *valid* conviction, the criminal defendant has been constitutionally deprived of his liberty." (emphasis added)).

¶34. In my view, the right to petition granted by the First Amendment may be interpreted as a subordinate right used to protect and maintain every person's right not to be deprived of liberty without due process. "It is a settled and invariable principle, that every right, when

19

withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803). Furthermore "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance." *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965).

¶35. The Petition Clause provides:

> Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and *to petition the Government for a redress of grievances*.

U.S. Const. amend. 1 (emphasis added). When discussing the Petition Clause, our United States Supreme Court has explained that "[t]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). "Interpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right."[13] *Id*. at 388. "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Id*. at 388-89.

¶36. After careful consideration of our federal and state history, which has acknowledged and adhered to this right at all times, in some capacity, I posit that the right to collaterally attack one's conviction is an implied right encompassed in our First Amendment's Petition Clause, which has been incorporated to apply against the states through the Fourteenth Amendment's Due Process Clause. Accepting as true that a prisoner has the inherent and

---

[13] For further explanation of the Petition Clause as a derivative of Clause 61 of the Magna Carta and as a right to obtain an adequate remedy, see Benjamin Plener Cover, *The First Amendment Right to a Remedy*, Yale Law Review (January 1, 2017), https://law.yale.edu/sites/default/files/area/center/liman/document/50-4_cover.pdf.

20

implied fundamental right to petition for redress (i.e., meaningful access to the courts) of his conviction or sentence, I would review section 99-39-5(2) under strict scrutiny. It is understood that the State has an interest in the finality of decisions.[14] But this state interest must be delicately balanced with the prisoner's liberty interest and be sufficient to infringe that interest. *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008).

III.

¶37. Hence the question is whether section 99-39-5(2) has been so narrowly tailored to meet the State's supposedly compelling interest. In other words, is an absolute bar to claims of unconstitutional imprisonment the least restrictive means to accomplish the government's purportedly vital interest in not concerning itself with prisoners after three years? "An act of congress repugnant to the constitution cannot become a law." *Marbury*, 5 U.S. at 138. "The courts of the U[nited] States are bound to take notice of the constitution." *Id.* And it is the "duty of the judicial department to say what the law is." *Id.* at 177. "If then the courts are to regard the constitution; and the constitution is superior to any ordinary act of the legislature; the constitution, and not such ordinary act, must govern the case to which they both apply." *Id.* at 178. This logic applies to the states, too.

¶38. Courts alone retain the authority to correct judgments. The right not to be deprived of liberty without due process of law, in conjunction with the right to petition the courts for

---

[14] The Supreme Court stated that "the primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time." *Cole v. State*, 608 So. 2d 1313, 1317 (Miss. 1992). In a similar vein, our Supreme Court has also stated that the "overriding intent and purpose of the [UPCCRA]" is to "guide and assist the judiciary in its duty to provide an orderly means of administering the post-conviction claims of a growing prison population." *Sykes v. State*, 757 So. 2d 997, 1000 (¶11) (Miss. 2000).

redress, is not an exception to section 99-39-5(2)'s time-bar. It is a necessary right of all citizens in our nation. I respect our Supreme Court's decision to overrule the judicially crafted fundamental-rights exception because our judiciary does not have the power to create statutory exceptions. *See Bank of State of Ala. v. Dalton*, 50 U.S. 522, 529 (1850) ("The legislature having made no exception, the courts of justice can make none, as this would be legislating."). But I am deeply concerned with whether section 99-39-5(2), as applied after *Howell*, overrides our principles of inherent freedom.

¶39.    At this time, I am of the mind that a prisoner's right to petition a court for relief, when alleging facially valid constitutional claims, should not be barred by section 99-39-5(2) in all circumstances. That person's liberty interest must be "delicately balance[d]" with the State's goal of judicial economy and efficiency. And yet, post-*Howell*, there is no recourse for the prisoner who was deprived of due process through no fault of his own but, perhaps because of his attorney, was not properly evaluated before a plea, trial, or at sentencing and subsequently did not file a PCR motion until after three years passed. To then have the expectation that the allegedly deprived prisoner (who is subject to the logistical problems of getting legal pleadings drafted and filed) has the wherewithal to understand his right to appeal and obligate him to have the recognizance to adhere to an arbitrary time-bar is both unfair and impractical. *Pate v. Robinson*, 383 U.S. 375, 384 (1966) ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."). Thus, the very nature of the circumstances prevents the prisoner from having a reasonable opportunity to request relief

and erodes the prisoner of access to the courts.

¶40.    No matter how fair or reasonable the time limitation, there is no justification for depriving citizens of their right to have the judiciary review their constitutional claims when fundamental due process rights have been raised and substantiated for the first time.  Our judiciary has the utmost responsibility to adhere to the Bill of Rights written by our founding fathers.  Thus, legislation, whether procedural or substantive in nature, should not usurp these inherent inalienable rights.[15]

 ¶41.    When courts begin to confine judicial authority in the face of legislation, despite sworn duties of judges to safeguard the constitution, the intended check on the balance of powers proves fruitless.  Either section 99-39-5, as interpreted and applied, makes room for substantive due process claims, or it risks transgressing our constitutions.

¶42.    Ideally, our Legislature would look to other state's post-conviction statutes as a guide and amend section 99-39-5(2) to include constitutional violations in the list of exceptions. In Colorado, for example, its post-conviction statute "includes exceptions to the bar of the time limitations calculated to assure that fundamental liberty interests will not be infringed upon provides added support for finding the statute constitutional." *People v. Wiedemer*, 852 P.2d 424, 435 (Colo. 1993).

¶43.    Until that time, however, we must inquire when prompted whether section 99-39-5(2)

---

[15] Of course, statutes must be interpreted and applied constitutionally, when possible. *See Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 97 (¶23) (Miss. Ct. App. 2006); *Ward v. Colom*, 253 So. 3d 265, 270 (¶16) (Miss. 2018) ("Courts must enforce the law 'unless it appears beyond all reasonable doubt to violate the Constitution.'" (quoting *Tunica County v. Town of Tunica*, 227 So. 3d 1007, 1015 (¶12) (Miss. 2017))); *Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell*, 216 Miss. 358, 62 So. 2d 383, 385 (1953).

is constitutional, as applied post-*Howell*, in the circumstances. If it is true that section 99-39-5(2) infringes on substantive due process rights, then I am of the mind that we are duty-bound by precedent to strike it down. *See State v. Jones*, 726 So. 2d 572, 573 (¶9) (Miss. 1998). Without the issue being presented or obvious, I cannot make that determination today. Therefore, I specially concur.

**McDONALD, J., JOINS THIS OPINION. BARNES, C.J., AND McCARTY, J., JOIN THIS OPINION IN PART.**